RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0007p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

MUSTAPHA HASSAN YOUNES,
      *Plaintiff-Appellee*,

      *v.*

OFFICER CHRISTOPHER PELLERITO, OFFICER
TIM CIOCHON, and SGT. JOANNE BEEDLE-
PEER, in individual and official capacities,
      *Defendants-Appellants*.

No. 13-1103

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cv-14109—Bernard A. Friedman, District Judge.

Decided and Filed: January 9, 2014

Before: McKEAGUE and STRANCH, Circuit Judges; COLLIER, District Judge.[*]

───────────────

## COUNSEL

───────────────

**ON BRIEF:** Joseph Nimako, CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C.,
Livonia, Michigan, for Appellants. Jeffrey Z. Dworin, Bloomfield Hills, Michigan,
Matthew C. Brown, BROWN & BROWN, P.L.C., Bloomfield Hills, Michigan, for
Appellee.

───────────────

## OPINION

───────────────

JANE B. STRANCH, Circuit Judge. Plaintiff Mustafa Younes brought this civil
rights action under 42 U.S.C. § 1983 alleging violations of his constitutional rights and
raising Michigan state law claims. The alleged violations occurred during his arrest by
defendants Officer Timothy Ciochon, Officer Christopher Pellerito, and Sergeant Joanne

───────────

[*]The Honorable Curtis Collier, Chief United States District Judge for the Eastern District of
Tennessee, sitting by designation.

Beedle-Peer (collectively, "the officers"). The officers appeal the district court's order denying them qualified immunity and state law governmental immunity. They fail to concede the most favorable view of the facts to Younes on the qualified immunity issues and also fail to demonstrate that no genuine issues of material fact remains on the state law governmental immunity issues. We therefore dismiss the qualified immunity appeal for lack of jurisdiction, and affirm the denial of summary judgment on the state law claims.

## I. BACKGROUND

On the evening of June 9, 2010, the officers were on duty with the City of Dearborn police department. The following facts, as described by the district court, are not in dispute:

> On the evening of June 9, 2010, plaintiff's neighbor, Rabee Yassine ("Yassine"), called the City's police department and reported that plaintiff was standing in his front yard and staring into his kitchen window. Yassine told the police that plaintiff appeared to be intoxicated. Within minutes, Sergeant Joanne Beedle-Peer arrived at the scene and briefly interviewed Yassine. After obtaining the relevant details of the incident, she crossed the street and approached plaintiff's home.

R. 34, D. Ct. Order, Page ID 729 (citations omitted). From this point on, the parties' accounts of what occurred diverge. The district court laid out Younes's account as follows:

> He testified (at times through an interpreter) that he was relaxing on his front porch when his dog noticed a rabbit across the street in Yassine's yard and gave chase. Plaintiff dashed across the street to retrieve the dog from Yassine's front yard when he saw "one guy [presumably Yassine], he jump in window and he talk something, and I tell him leave me alone." Plaintiff then returned to his seat on his own front porch when a police officer attacked him without warning. He described the altercation as follows:
>
> > "I see police, he hit me. I don't know, first time, I don't know is a police officer, I don't know. I heard him. I heard him but I'm [sic] not see him. Because since he spray my eyes and he hit me on my head and he hit me next one, he hit me left and right. I mean this only thing

> I see. He tell me - I hear him, he tell me I'm police
> officer. . . [he] spray something in my eyes, and you [sic]
> hit me on my head, you not ask me for anything."

> The officers, which plaintiff numbered at more than five, allegedly
> kicked him and struck him repeatedly across his head, back and arms as
> they forced him to the ground. Plaintiff never attested that the female
> officer touched him in anyway and denied that he had consumed alcohol
> prior to his confrontation with defendants.

> After they arrested him, the officers placed plaintiff in their patrol
> car so they could transport him to the police station. According to
> plaintiff, during the course of the drive, the officers allegedly pulled over
> and continued to beat plaintiff and "sprayed. . . [his] mouth." Plaintiff
> could not identify any of the officers that either beat or sprayed him.

R. 34, D. Ct. Order, Page ID 730–31 (citations omitted).

Another of Younes's neighbors, Paula Kania, witnessed the incident. She testified that she saw two male police officers strike Younes, one punching him and one kicking him, and that after beating him up, the officers drove off and Younes got up and walked away.

The officers' account of the incident differs substantially from Younes's. According to their account, Sergeant Beedle-Peer first spoke to Yassine when she arrived on the scene and Yassine told her that Younes was an alcoholic. Sergeant Beedle-Peer then walked over to Younes's property where he was sitting on his front porch and asked him if he had gone onto Yassine's property. He did not respond and appeared angry. Sergeant Beedle-Peer testified that Younes attempted to stand up, but was unsteady on his feet and that when she asked him if he had been drinking he again failed to respond. While she was speaking with Younes, Officers Ciochon and Pellerito arrived. According to Officer Ciochon, Sergeant Beedle-Peer waved them over to the porch, telling them to quickly get up to the house. The three officers testified that Younes's breath smelled of alcohol, though Officer Ciochon said that he did not see a bottle.

The three officers and the neighbor who called the police, Yassine, testified that Younes lunged at Officer Beedle-Peer and that Officers Pellerito and Ciochon then took

him to the ground and arrested him. Sergeant Beedle-Peer attested that while she never touched Younes, she did not recall if she had assisted in pulling him to the ground. Officer Ciochon testified that Sergeant Beedle-Peer was standing on the ground in front of the porch and that he and Officer Pellerito had to go up on the porch to bring Younes to the ground after Younes lunged at Sergeant Beedle-Peer because Younes stayed on the porch behind the railing and refused to come down.

According to the officers' account, they arrested Younes, put him in Officer Ciochon and Pellerito's patrol car, and drove directly to the police station. Younes hit the front of his head against the rear cage of the patrol car multiple times during the drive. The patrol car video confirms that Younes hit his head against the rear cage and that Officers Ciochon and Pellerito drove directly to the police station, contradicting Younes's account as to what happened once he was in the car.

Younes also submitted evidence of his medical records from the incident. These note a closed head injury, jaw and foot/ankle contusions, and a hand fracture. Younes also saw a dentist for a broken tooth he claimed was related to this incident. Subsequent medical examinations have shown persistent symptoms "suggestive of impaired consciousness."

Younes brought suit against the officers and the City of Dearborn under 42 U.S.C. § 1983. The complaint alleged that the officers violated Younes's constitutional rights by arresting him without probable cause and using excessive force. The complaint also brought state claims for false arrest, false imprisonment, malicious prosecution, battery, and gross negligence. The defendants filed a motion for summary judgment on the basis of qualified immunity for the constitutional claims and governmental immunity for the state law claims. The district court granted summary judgment on the state law claims of gross negligence as to the officers and battery as to Sergeant Beedle-Peer. It denied summary judgment on the other claims, finding that genuine issues of material fact remained. The officers appeal the denials of immunity.

## II. ANALYSIS

This appeal comes to us prior to resolution of all claims in the litigation. It challenges the district court's rulings regarding two distinct defenses—qualified immunity from liability under § 1983 and state law governmental tort immunity. We have appellate jurisdiction to entertain both. Because final judgment has not been entered below, our jurisdiction over the § 1983 qualified immunity defense arises under the collateral order doctrine and depends upon the existence of "neat abstract issues of law," as distinct from factual disputes. *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (internal quotation marks omitted) (observing that to the extent the defendant's arguments contest the plaintiff's version of the facts, we lack appellate jurisdiction). Because the denial of state law governmental tort immunity is a final order under Michigan law, we also have appellate jurisdiction over an interlocutory appeal from the district court's denial of the defense of state law immunity. *Bennett v. Krakowski*, 671 F.3d 553, 560 (6th Cir. 2011). For Younes's pendent state law claims, therefore, we evaluate the propriety of denying a summary judgment motion asserting state governmental tort immunity by applying the substantive law of Michigan and our own procedural law.

### A. Qualified Immunity

The collateral order doctrine provides this court with jurisdiction to hear an interlocutory appeal of a denial of qualified immunity. *See Chappell v. City of Cleveland*, 585 F.3d 901, 905 (6th Cir.2009). It applies only to the extent that the denial was based on a "pure question of law." *Leary v. Livingston Cnty.*, 528 F.3d 438, 447–48 (6th Cir. 2008) (internal quotation marks omitted). "A defendant challenging a denial of summary judgment on qualified immunity grounds must be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Thompson v. Grida*, 656 F.3d 365, 367 (6th Cir. 2011) (internal quotation marks omitted). Where a defendant relies instead on her own disputed view of the facts, "the appeal boils down to issues of fact and credibility determinations that we cannot make." *Id.* In such cases, we lack jurisdiction. *Id.*

The officers state that they are conceding the view of the facts most favorable to Younes, yet their arguments dismiss or ignore relevant aspects of Younes' account and treat their own account of the facts as undisputed. Among the aspects of Younes's account that the officers fail to credit are Younes's evidence that he did not lunge at Sergeant Beedle-Peer, that he does not drink alcohol, and that he was sprayed in the eyes and struck by police officers resulting in injuries. The officers reliance on disputed facts is evident almost immediately as the officers first appeal issue—that their use of force was objectively reasonable—begins by contesting Younes's account.[1] The officers argue that because of the difference between their account of the incident and Younes's, combined with the contradictions in some parts of Younes's statement of facts, the district court should have ignored all of Younes's account. That is not the analysis we undertake. Nonetheless, the officers' appeal issues related to qualified immunity, including the false arrest issue, all rely on their version of the facts. Younes has submitted evidence disputing the officers' account that he was intoxicated, that he taken down and arrested because he lunged at Sergeant Beedle-Peer, and that the force used was not excessive. This court does not ask "whether the officers were entitled to qualified immunity under the officers' version of the facts," but whether the plaintiff has disputed those facts. *Thompson*, 656 F.3d at 367. Younes has.

There is one limited exception to the requirement that a defendant seeking qualified immunity must concede the plaintiff's factual account—the plaintiff's account can be disregarded where the evidence is "'so utterly discredited by the record' as to be rendered a 'visible fiction.'" *Chappell*, 585 F.3d at 906 (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)). In *Harris* the plaintiff's account was totally discredited because it was contradicted by video evidence of the incident.[2] 550 U.S. at 380–81.

---

[1]Where a defendant asserting a qualified immunity defense properly concedes the view of the facts most favorable to the plaintiff, we undertake a two-step analysis, asking: "(1) whether considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and, if so, (2) whether that right was clearly established." *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006). This first step requires consideration of the "objective reasonableness" of the conduct in light of what the officer actually observed. *Chappell*, 585 F.3d at 912.

[2]Younes's brief on appeal continues to allege that Officers Ciochon and Pellerito also used excessive force on the drive to the police station. However, the district court foreclosed liability on these grounds, holding that the video from the patrol car directly contradicts Younes's evidence and confirms

Here, the officers challenge Younes's account and some statements of his witness, Kania, based on their own testimony and that of the "independent" witness Yassine, who initially called the police. The officers' testimony of the incident is not the type of evidence in the record which "utterly discredit[s]" Younes' version of the facts and therefore the officers must accept the plaintiff's version of the facts in order for this Court to have jurisdiction over their suit. *Harris*, 550 U.S. at 380.

The officers also contend that the district court failed to assess the individual liability of each officer. The district court dismissed the state law claim of battery against Sergeant Beedle-Peer but Officers Ciochon and Pellerito nonetheless challenge the district court's use of their presence at the incident to identify them as the officers responsible for the alleged excessive force. They next argue that the facts do not demonstrate that Officers Ciochon and Pellerito were involved in any excessive use of force. They lastly contend that there was no evidence that Sergeant Beedle-Peer observed or had reason to know of any use of excessive force. These arguments all rely on the officers' version of the facts, which concedes that Officers Ciochon and Pellerito were present at the incident, admits that they took down Younes, but concludes that no use of excessive force occurred. Both Younes's and Kania's testimony dispute that account and provide evidence that at least two male police officers used excessive force.

Despite claiming otherwise, the officers failed to satisfy the jurisdictional requirement to appeal a denial of qualified immunity that they must concede the most favorable view of the facts to Younes. We are left with "precisely the sort of factual dispute over which this Court lacks jurisdiction." *Thompson*, 656 F.3d at 368.

**B. Governmental Immunity**

This court has jurisdiction over an interlocutory appeal of a denial of governmental immunity under Michigan law. *Bennett*, 671 F.3d at 560. We review a denial of governmental immunity on a motion for summary judgment de novo and "view

---

the officers' account. Unlike the remaining evidentiary disputes in this case, the district court could properly discredit the plaintiff's evidence because it is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Harris*, 550 U.S. at 380.

all facts in a light most favorable to the non-moving party and draw inferences in favor of the non-movant. We apply Michigan governmental immunity law and federal procedural law to the issue." *Smith v. Cnty. of Lenawee*, 600 F.3d 686, 690 (6th Cir. 2010) (internal citations omitted). Thus, where a plaintiff has "made a sufficient showing to create a genuine issue of fact" summary judgment is precluded. *Bennett*, 671 F.3d at 562.

Here, the district court applied the proper legal standard—drawn from the Michigan Supreme Court—noting that:

> A government employee "enjoys a right to immunity if (1) the employee undertook the challenged acts during the course of his employment and was acting, or reasonably believed that he was acting, within the scope of his authority; (2) the employee undertook the challenged acts in good faith or without malice; and (3) the acts were discretionary, rather than ministerial, in nature."

R. 34, D. Ct. Order, Page ID 729 (quoting *Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011)). The officers' appeal of the state law claims, including whether their conduct was in good faith, relies on the same disputed facts as the qualified immunity claims. (Appellant's Brief, p. 29–31). Having determined that genuine issues of material fact remain, the district court properly denied summary judgment on those claims.

### III. CONCLUSION

For the above reasons, we DISMISS the officers' appeal of the district court's denial of the qualified immunity for lack of jurisdiction, AFFIRM the district court's denial of governmental immunity, and REMAND to the district court to proceed with trial.