NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0198n.06

No. 16-3608

FILED
Apr 04, 2017
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ALEX LITTLEJOHN,

 Plaintiff-Appellee,

v.

RONALD MYERS, et al.,

 Defendants-Appellants.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

BEFORE: CLAY, SUTTON, and GRIFFIN, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Alex Littlejohn sued Defendants Ronald J. Myers and the City of Cleveland pursuant to 42 U.S.C. § 1983 alleging against Officer Myers a violation for excessive force in contravention of the Fourth Amendment. Littlejohn also brought state law claims against Myers, and a *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978) claim against the City of Cleveland. Myers moved for summary judgment on the grounds that he was entitled to qualified immunity. The district court denied his motion and this interlocutory appeal followed. For the reasons set forth below, we **AFFIRM** the district court's decision.

BACKGROUND

I. Factual background

On May 3, 2014, John Tisdel and Littlejohn entered a Family Dollar store in Cleveland intending to rob it. Littlejohn possessed a weapon, which he brandished inside the store. Shortly

thereafter, police officers Myers and Andrew Haydruk were dispatched to the scene after being notified that an armed robbery was in progress. When the officers arrived, they glanced through the storefront window but failed to see either of the two suspects. Littlejohn, however, did notice the officers, and fled out the side door. Prior to exiting the store, Littlejohn handed his firearm to Tisdale. Neither Myers nor his partner witnessed the exchange.

As the suspects absconded from the side door leading into an alley, Myers and Haydruk stood already waiting for them. Instead of surrendering to the officers, Littlejohn and Tisdale took off in opposite directions. Littlejohn, pursued by Myers, ran into a dead end, whereupon he attempted to scale a fence in order to escape. Myers seized Littlejohn by his pants and threw him to the ground face-first. Because of the force with which Myers grabbed Littlejohn, he pulled Littlejohn's pants down low enough to expose his hips and torso. Proceeding to place his knee on top of Littlejohn's back, Myers conducted a quick search of Littlejohn's person to ensure that he was not armed. Myers then radioed in the arrest and started to handcuff Littlejohn. But before he placed the second cuff around Littlejohn's wrist, Littlejohn rolled his hips, pushed off the ground, and threw Myers off him.

At this juncture, the litigants' versions of the facts differ substantially. For purposes of this interlocutory appeal, Myers concedes that Littlejohn's version of the facts controls. Littlejohn claims that upon breaking free, he did not reach for Myers' gun or taser. Nor did he strike him or make any verbal threat to Myers. He never made any furtive gestures indicating possession of a weapon or an attempt to reach for one. Instead, he simply began to flee, at which point Myers shot him in the lower back. Myers never issued a warning prior to discharging his weapon.

## II.     Procedural History

Littlejohn initially filed a complaint in Ohio state court. On May 27, 2015, defendants Myers and the City of Cleveland removed the case to federal court. In response, Littlejohn filed an amended complaint on August 2, 2015, alleging that Myers violated his Fourth Amendment right to be free from excessive force; in addition, Littlejohn brought state law claims of assault and battery, and intentional infliction of emotional distress. The complaint also included a *Monell* claim against the City of Cleveland. A conference was held on August 20, 2015, during which the parties agreed to limited discovery to address the issue of qualified immunity. Following discovery, Myers moved for summary judgment. He also requested immunity under Ohio law for any state law claims brought against him. On May 17, 2016, the district court denied Myers' motion for summary judgment on Littlejohn's excessive force claim, and explicitly declined to rule upon his state immunity defense. This interlocutory appeal followed.[1]

## DISCUSSION

## I.     Standard of Review

This Court reviews *de novo* a district court's denial of a defendant's motion for summary judgment on qualified immunity grounds. *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 565 (6th Cir. 2013). Summary judgment is appropriate if the movant cannot show that there is a genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). In the qualified immunity context "a defendant challenging a denial of summary judgment . . . must be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Thompson v. Grida*, 656 F.3d 365, 367 (6th Cir. 2011) (internal citation omitted). In such a circumstance, the issue is purely legal. *See Grawey v. Drury*, 567 F.3d 302, 310 (6th Cir. 2009). However, where the

---

[1] While most denials of summary judgment are non-final orders which cannot be appealed pursuant to 28 U.S.C. § 1291, an order denying qualified immunity is, in fact, immediately appealable. *See Mitchell v. Forsyth*, 472 U.S. 511, 525–27 (1985).

defendant disputes the facts on appeal, the appeal involves the ordinary issue of the existence, or non-existence, of a triable issue of fact. *Johnson v. Jones*, 515 U.S. 304, 313 (1995). In that situation, the district court's determination that the summary judgment record raises a genuine issue of fact concerning the officials' involvement is not an immediately appealable final decision and this Court lacks jurisdiction. *Thompson*, 656 F.3d at 367.

## II. Analysis

Littlejohn brought a claim under 42 U.S.C. § 1983, alleging a constitutional violation of his Fourth Amendment rights. To state a claim under § 1983, a plaintiff must set "forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (internal citation omitted). Neither party disputes that Myers acted under color of state law. Rather, this interlocutory appeal challenges the district court's decision to deny qualified immunity to a state actor. Qualified immunity is appropriate when an official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal citation omitted). The qualified immunity analysis contains two components, which courts may analyze in any order: (1) whether the plaintiff has established with the requisite proof the violation of a constitutional right, and (2) whether the particularized right at issue was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009). When a defendant invokes qualified immunity in a motion for summary judgment, the plaintiff must offer sufficient evidence to create a genuine dispute of fact that the defendant violated a clearly established right. *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608–09 (6th Cir. 2015).

The district court in this case denied qualified immunity, finding that genuine issues of material fact existed for trial. But the fact that the district court denied the motion on such grounds "does not necessarily preclude this [C]ourt's jurisdiction over defendants' appeal." *Livermore v. Lubelan*, 476 F.3d 397, 402 (6th Cir. 2007). Rather, "*regardless of the district court's reasons for denying qualified immunity*, [this Court] may exercise jurisdiction over the . . . appeal to the extent it raises questions of law." *Williams v. Mehra*, 186 F.3d 685, 689–90 (6th Cir. 1999) (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996)) (emphasis in original). Myers concedes Littlejohn's version of the facts, and instead argues that under Littlejohn's alleged facts, this Court cannot find a violation of clearly established law. Because the instant case turns on whether Littlejohn's alleged facts show a violation of clearly established law, and not on which facts the parties may be able to prove at trial, this Court has jurisdiction. *Mitchell*, 472 U.S. at 527.

### A.  Constitutional violation

An excessive force claim is "most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Accordingly, to determine whether force is excessive, courts "apply an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). In so doing, a court "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is

necessary in a particular situation." *Livermore*, 476 F.3d at 405 (quoting *Smith v. Freland*, 954 F.2d 343, 346–47 (6th Cir. 1992)).

This Circuit has employed a non-exhaustive list of three factors to evaluate whether an officer's actions are reasonable: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 534 (6th Cir. 2006)). But the ultimate inquiry is always whether the totality of the circumstances justified the use of force. With respect to the reasonableness factors, both the severity of the crime—armed robbery—and the fact that Littlejohn actively resisted arrest, militate in favor of a finding that Myers' use of force was reasonable.

With that said, this Court has explicitly stated—regardless of the other factors—that with respect to the use of deadly force, there is a minimum requirement that the officer have "probable cause to believe that the suspect poses a threat of severe physical harm, either to the officer or others." *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005). Our analysis turns on whether Myers had probable cause to believe that Littlejohn presented a serious danger to either himself or others at the moment Myers discharged his firearm. *See Bouggess v. Mattingly*, 482 F.3d 886, 890 (6th Cir. 2007) (the relevant time for purposes of this inquiry "is the moment immediately preceding the shooting"). As a general note, the mere fact that Littlejohn was a felon fleeing from police is not sufficient to justify the use of deadly force. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do

so."). On the other hand, if a suspect threatens either an officer or any other person with serious physical harm during flight, deadly force is authorized. *Dickerson*, 101 F.3d at 1163.

Myers' entire argument rests on the contention that it was reasonable for him to believe that Littlejohn was armed at the moment that he shot him. Specifically, Myers notes that he was responding to an armed robbery during which a suspect threatened employees with a handgun. Myers claims that at no point did he see Littlejohn turn over his weapon to Tisdale. Accordingly, he argues that he could justifiably assume that Littlejohn possessed a firearm. When evaluated in combination with the seriousness of Littlejohn's crime, and his willingness to resist arrest through the use of force, Myers argues that any reasonable officer would have concluded, as Myers did, that Littlejohn posed a serious threat. Therefore, shooting him was warranted. We disagree.

Perhaps under different circumstances, it would be appropriate for an officer to assume that the suspect of an armed robbery was, in fact, armed. But the facts of this case dispel any such assumption. Although Myers never saw Littlejohn dispose of his weapon in the store, plenty of indicia existed to suggest to Myers that Littlejohn was not armed. Myers never actually saw Littlejohn possess a weapon during the robbery—in fact Myers never actually saw Littlejohn in the store committing the attempted robbery. He simply presumed that Littlejohn was the perpetrator based on his flight. Moreover, during Littlejohn's initial flight from the store, Myers seized Littlejohn by his pants, and in the process exposed his waist and hips. He then conducted a hand sweep to specifically check for any weapons. Throughout the encounter, he detected no gun on Littlejohn's person or anywhere in the vicinity. And when Littlejohn took flight, he never revealed any sign of possessing a weapon. In light of these circumstances, Myers had little more

than his own conjecture from which to conclude that Littlejohn was armed, and substantial evidence suggested that Littlejohn was not.

But even crediting Myers' belief that Littlejohn was armed, courts have noted that the mere fact that a suspect is armed is, by itself, not sufficient to warrant the application of deadly force. *See*, *e.g.*, *Bouggess*, 482 F.3d at 896; *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997). Rather, the inquiry turns on whether Myers had probable cause to believe that Littlejohn posed a threat of serious physical harm, either to himself or to others. *See Chappell v. City Of Cleveland*, 585 F.3d 901, 910 (6th Cir. 2009). Myers' conclusion that Littlejohn constituted a threat rests entirely on a misplaced belief that Littlejohn was armed, and that he previously attempted a robbery. But at the moment that he was shot, it is hard to see what threat of serious harm Littlejohn posed to anyone in the alley. Upon resisting arrest by merely bucking his hips and evading Myers' grasp, Littlejohn never explicitly threatened Myers, never reached for a weapon, and never attempted to strike the officer. Instead, he immediately began to run. During his flight, Littlejohn did not reach to his side or make any comparable gesture that may have given a reasonable officer the impression that Littlejohn posed a serious threat. And the facts indicate that no one beside Myers was in the alley—removing any threat to an innocent bystander. Consequently, we conclude that a reasonable officer would not have exercised deadly force under the circumstances because Littlejohn did not constitute a threat to either the officer or to any bystanders.

Myers attempts to argue that such a conclusion would be erroneous in light of the obvious threat Littlejohn presented at the time of the armed robbery. However, we are required to focus on the immediacy of the threat posed by Littlejohn at the moment he evaded Myers' restraint. *See Kirby v. Duva*, 530 F.3d 475, 481–82 (6th Cir. 2008) (denying qualified immunity

to officer where, under plaintiff's facts, "no one was ever in danger"); *see also Scott v. Harris*, 550 U.S. 372, 383–84 (2007) ("Although there is no obvious way to quantify the risks on either side, it is clear from the videotape that respondent posed an actual and *imminent* threat to the lives of any pedestrians who might have been *present* . . . .") (emphasis added). And given the facts, a reasonable officer would not have concluded that Littlejohn presented an imminent threat to the lives of any pedestrians or to the officer. *See Washington v. Newsom*, 977 F.2d 991, 994–95 (6th Cir. 1992) (flight from ongoing armed robbery, without more, does not permit use of deadly force). Our conclusion is further buttressed by the fact Myers never warned Littlejohn that he might shoot, as required by *Garner* when feasible under the circumstances. *See Bouggess*, 482 F.3d at 892. Consequently, we agree that under Littlejohn's version of the facts, Myers violated Littlejohn's Fourth Amendment rights.

## B.  Clearly established

Next, we must answer the question of whether the right to be free from excessive force in the form alleged by Littlejohn was clearly established at the time of the seizure.  A right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) *rev'd on other grounds by Pearson v. Callahan*, 555 U.S. 223 (1991). Qualified immunity is an objective rather than a subjective inquiry. *Baynes v. Cleland*, 799 F.3d 600, 610–11 (6th Cir. 2015). The Supreme Court has repeatedly cautioned that rights are not to be defined at a "high level of generality" but instead the inquiry must be undertaken in light of the specific context of the case. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). With that said, an official

can be on notice that his conduct violates established law even in novel factual situations. *Hope v. Pelzer*, 536 U.S. 730, 731 (2002); *Anderson*, 483 U.S. at 640 ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . .").

Undoubtedly, a suspect's right to be free from excessive force is clearly established. *Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011). However, it is not appropriate to define a right at such a broad level of generality. The district court held that an officer who employs deadly force against a fleeing suspect without reason to believe that the suspect poses a significant threat of serious physical harm to himself or others constitutes an excessive force violation. In so doing, the district court relied upon this Circuit's 2007 decision, *Bouggess v. Mattingly*, to say such a right was clearly established. The aforementioned case clearly establishes a constitutional violation when an officer shoots a fleeing suspect in the back without a basis for believing that the suspect poses an imminent threat, regardless of the previous felony the suspect committed. *See Washington*, 977 F.2d at 994–95. As we have previously explained, Littlejohn did not pose a threat to the officer or to any innocent bystanders. Accordingly, a reasonable officer in Myers' position would know that the use of deadly force was not authorized.

## C. State law immunity

Myers asks this Court to dismiss Littlejohn's state law claims on the basis of Ohio law, which affords immunity to employees of political subdivisions for negligence claims arising out of the course and scope of the person's employment. *See* Ohio Rev. Code § 2744.03. We decline to do so because this issue is not properly before this Court.

In cases involving pendent state claims, this Court looks to state immunity law to determine whether a denial of immunity based on state law is appealable. *Livermore*, 476 F.3d at

407. Myers notes that "when a trial court denies a motion in which a political subdivision or its employee seeks immunity . . . that order denies the benefit of an alleged immunity and is therefore a final, appealable order." *Hubbell v. City of Xenia*, 873 N.E.2d 878, 883 (Ohio 2007). However, the district court expressly noted in its opinion that it was only ruling upon the question of qualified immunity for Littlejohn's excessive force claim, and explicitly withheld any conclusions as to Littlejohn's state law claims. Myers neglects to explain why the district court's action is tantamount to a denial of his motion, and therefore, why it is a final order meriting the exercise of this Court's jurisdiction. Nor does he provide any case law to this effect. The Ohio statute is quite clear that "[a]n order that *denies* . . . the benefit of an alleged immunity from liability . . . is a final order." Ohio Rev. Code Ann. § 2744.02(C) (emphasis added). Interlocutory appeals are usually discouraged, and therefore the issues that may be reviewed are to be "narrow and selective." *See Kelly v. Great Seneca Fin. Corp.*, 447 F.3d 944, 949 (6th Cir. 2006) (internal citations omitted); *see also Allen v. Okam Holdings, Inc.*, 116 F.3d 153, 154 (5th Cir. 1997) ("Interlocutory appeals are generally disfavored, and statutes permitting them must be strictly construed."). Moreover, this Court usually does "not address on appeal issues that were not raised and *ruled upon* in the district court" except in "exceptional circumstances." *United States v. Poole*, 407 F.3d 767, 773 (6th Cir. 2005) (emphasis added). Myers does not point to any exceptional circumstances warranting the exercise of this Court's jurisdiction.

## CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's decision to deny summary judgment, dismiss Myers' state law appeal for lack of jurisdiction, and remand for proceedings consistent with this opinion.